UNITED STATES of America

v.

Steven SCHWARTZ.

No. 88–00215–01.

United States District Court,
E.D. Pennsylvania.

Oct. 30, 1995.

Michael Levy, Asst. U.S. Atty., Defender Ass'n of Philadelphia, Philadelphia, PA, for U.S.

Steven Schwartz, Plymouth Meeting, PA, pro se.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

KATZ, District Judge.

**AND NOW,** this 30th day of October, 1995, following a probation revocation hearing pursuant to Fed.R.Crim.P. 32.1(a)(2), the court

makes the following findings of fact and conclusions of law.

1. On August 16, 1995, the Probation Office filed a petition with the court requesting a probation revocation hearing (the "Revocation Petition") on the grounds that Mr. Schwartz has violated the conditions of his probation. On October 23, 1995, the government filed its Notice of Violation of Probation and Hearing Memorandum (the "Notice"), which was amended on October 26, 1995 to reflect defendant's conduct on October 23, 1995. Mr. Schwartz's probation requires that he:

(1) refrain from violation of any law (federal, state, and local) and get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer....

(4) answer truthfully all inquiries by the probation officer ...

A special condition for payment of the fine and restitution was also imposed. Judgment and Commitment Order of May 26, 1989 (hereinafter J & C) at 2.

2. The Revocation Petition charges Mr. Schwartz with violating these conditions by committing disorderly conduct,[1] on July 10, 1995, at the Montgomery County Courthouse by trying to force his way into the chambers of Common Pleas Judge Bernard A. Moore after making several phone calls to Judge Moore's chambers that were not resolved to Mr. Schwartz's satisfaction. The Notice expands the grounds for revocation to include lying to the probation officer, failing to file income tax returns, and not making a good faith effort to pay the restitution and fine.

3. Mr. Schwartz contests the factual assertions in the Revocation Petition. In addition, Mr. Schwartz argues that the Revocation Petition should be denied as moot because his term of probation expired prior to the alleged conduct upon which the petition is based.

4. Thus, the court must determine: (1) whether Mr. Schwartz's term of probation expired prior to the events giving rise to the revocation petition; and, (2) if not, whether Mr. Schwartz violated the conditions of his probation as charged in the Revocation Petition.

*Probation History*

5. This court's judgment and commitment order of May 26, 1989 directed:

On Count 3 defendant is committed to the custody of the Attorney General or his duly authorized representative for imprisonment for a term of EIGHTEEN MONTHS.

On Count 2 defendant shall pay a fine to the United States of $10,000.00 (TEN THOUSAND DOLLARS). Sentence of imprisonment is suspended and defendant is placed on probation for a term of five years on the special conditions that he pay the fine, restitution to Philadelphia Nation Bank of $94,085.25 (NINETY–FOUR THOUSAND, EIGHTY–FIVE DOLLARS AND TWENTY–FIVE CENTS), the special assessment of $100.00 (ONE HUNDRED DOLLARS) on such terms as the probation office determines he is able and that the defendant shall make no direct contact with any witness or the family, associates or friends of any witness.[2]

J & C at 1.

6. After imposing this sentence, the court stayed its execution and continued Mr. Schwartz's bail pending appeal. On May 25, 1990, after Mr. Schwartz's conviction was affirmed on appeal, the court revoked Mr. Schwartz's bail and directed the United States Marshal to execute the custodial sentence imposed on May 26, 1989. Order of May 24, 1990.

7. Mr. Schwartz's term of probation did not begin to run while his sentence was stayed pending appeal, nor did his term of probation run during the period of his custodial sentence on Count Three. 18 U.S.C. § 3564(a) (term of probation does not run while the defendant is imprisoned in connection with a conviction for a Federal, State, or

---

1. 18 Pa.C.S.A. § 5503.

2. Restitution was reduced to $63,936.16 by Order of May 24, 1990.

local crime unless the imprisonment is for a period of less than thirty consecutive days).[3]

8. On July 5, 1991, Mr. Schwartz completed the custodial sentence imposed on Count 3 and commenced the five year probationary term imposed on Count 2. Mr. Schwartz's term of probation was originally scheduled to expire on July 4, 1996.

█ 9. Mr. Schwartz argues that his probationary sentence commenced prior to July 5, 1991. A footnote in the court's Order of April 6, 1994 reads:

The court's Orders of February 25, 1991 (Document 117), September 25, 1991 (Document 124), October 7, 1991 (Document 129), January 4, 1994 (Document 142), and Feb 3, 1994 (Document 148) deal with its supervision of defendant's probation.

The footnote in the April 6, 1994 Order is dictum. By its terms, the February 25, 1991 Order does not regulate or purport to regulate defendant's probation, but rather his behavior.[4] Mr. Schwartz commenced serving his probationary term on July 5, 1991. The special conditions of the probation applied during the probationary term. The February 25, 1991 Order was necessary to regulate his behavior before commencement of the term of probation.

10. On March 15, 1994, upon petition from the Probation Office, the court ordered a probation revocation hearing pursuant to Fed.R.Crim.P. 32.1 to determine whether Mr. Schwartz's conduct with regard to his financial condition and his efforts to satisfy his fine and restitution obligations violated his probation. A hearing was held April 6, 1994. After entertaining the parties' opening statements, the court continued the hearing to May 17, 1994 to provide the defendant and the government the opportunity to refine their respective positions in order to foster (a) clear communication between Mr. Schwartz and the Probation Office, and (b) efficient presentation of the issues at the hearing on May 17, 1994.

11. On May 17, 1994, at the conclusion of the probation revocation hearing, the court revoked Mr. Schwartz's probation and sentenced him as follows:

... defendant is committed to the custody of the Attorney General for confinement in a jail-type facility for a period of six months. The execution of the remainder of the sentence is suspended and the defendant is placed on probation following the term of confinement for the unexpired term of his previously imposed probation on the same terms and conditions as previously imposed.

12. The revocation of Mr. Schwartz's probation was based on the court's finding that he: (1) willfully refused to pay the fine and restitution ordered by this court as special conditions of his probation; and (2) violated a General Condition of his probation by not following his probation officer's instructions regarding disclosure of his financial condition and by falsifying information in response to the probation officer's inquiries.[5] The court specifically found that Mr. Schwartz: (1) contrived a scheme with his mother and a Ms. Dorsey to conceal funds (at least $59,530.60 of a $99,530.60 award) received in a securities arbitration in order to evade payment of his fine and restitution obligations; (2) concealed from the Probation Office his interest in funds ($45,000.00) received from the settlement of a civil suit in order to evade payment of his fine and restitution obligations; and (3) failed to provide the Probation Office with a truthful accounting of the funds he controlled

---

3. The court recognizes that this statute applies to offenses committed after November 1, 1987. *See* 18 U.S.C. §§ 3651–3656 (1988) (note on enabling legislation and effective dates); *United States v. Hinckle,* 761 F.Supp. 403, 404 (E.D.Pa.1989). The statute in effect when defendant committed the instant offenses is silent as to the commencement date for a term of probation and does not address whether a term of probation runs concurrently with or consecutive to a related custodial term. In any event, it is the sentencing court's intent that controls. Here, it was clearly the court's intent for the probationary sentence to be stayed pending appeal and to run consecutively to defendant's custodial sentence.

4. The Order of February 25, 1991, directed that all future contact with chambers should be by motion rather than by letter, telephone call, or personal visit.

5. Mr. Schwartz's probation requires that he "follow the probation officer's instructions and report as directed." J & C at 2.

as a result of securities arbitration and the civil settlement. Findings of Fact and Conclusions of Law of May 17, 1994.

13. Thus, Schwartz's probation/imprisonment time-line is that: Schwartz was released on bail pending appeal after his sentence was imposed. On May 24, 1990, this court revoked Schwartz's bail and committed him to the custody of the Attorney General. He was released on parole on July 5, 1991. On May 17, 1994, this court found Schwartz in violation of his probation and sentenced him to six months in prison and the balance of his term on probation. He was released on October 4, 1994.

In *United States v. Lancer*, 508 F.2d 719, 733 (3d Cir.1974), *cert. denied*, 421 U.S. 989, 95 S.Ct. 1992, 44 L.Ed.2d 478 (1975), the Court rejected a "mechanical computation" of probation. Lancer argued that probation started on the day the sentence was imposed, even though he had to serve a term of imprisonment of two months on a different count of the same indictment. The Court rejected this argument stating, *id.* at 733 n. 42 (citations omitted):

> Time spent in jail has not been counted as time spent on probation. In the absence of express direction by the sentencing court concerning the time when probation is to commence (and its relation to intervening jail time, parole, etc.), probation would be tolled during such periods and would resume upon release from confinement.[6]

■ Applying *Lancer*, Schwartz did not even begin to serve his probation until July 5, 1991. The earliest his probation could expire is July 5, 1996. To this date, however, one must add the time that Schwartz spent in prison on the revocation—four months, sixteen days—to get a termination date of November 21, 1996.[7] Thus, this court has the

authority to hold this hearing and to determine if Schwartz has violated his probation.

The necessary premise of defendant's contention is that his term of probation ran during the time he was in prison serving the eighteen month prison sentence. This proposition was not the intention of the sentencing court. If his time in prison is not counted, this revocation petition was timely and the violations occurred during the term of probation under any of the alternative interpretations of the court's sentence. The opinion of one of defendant's former lawyers does not determine this legal question, nor is the former lawyer's opinion well founded, since the cases cited involve totally different issues.

Whether the probation began on May 26, 1989 when defendant was sentenced or on May 24, 1990 when his bail was revoked after the appeal, the probation is still in effect. Thus, even if the prohibition against contacting witnesses was operative after the sentence but before the commitment, the term of probation has not expired. The point is that the term of probation was tolled during defendant's two imprisonments because that was the intention of the court, and it would make little sense to have a defendant in prison also serving probation at the same time. Because Schwartz's probation was tolled while he was in prison, Schwartz's probation still would not expire until November 19, 1995 even if it began on May 26, 1989.

*Violation of the Law—Disorderly Conduct Charge*

■ 14. On July 10, 1995, Mr. Schwartz was arrested outside the chambers of Montgomery County Common Pleas Judge Bernard Moore and charged with disorderly conduct in violation of 18 Pa.C.S.A. § 5503. After an adverse ruling in a civil matter, Mr. Schwartz repeatedly telephoned Judge Moore's chambers and then appeared in per-

---

**6.** This court's decision in *United States v. Hinckle*, 761 F.Supp. 403 (E.D.Pa.1991), is inapposite since Hinckle was placed on work release on consecutive weekends. The total amount of time on work release was 90 days. The revocation petition was filed on March 26, 1991. Five years from the date of imposition of sentence on June 2, 1990. Thus, even adding 90 days to the probation time to remove the time on work release would not have made the petition timely. In any event, strong facts overcome strong presumptions.

**7.** Even if one assumes that Schwartz was on probation while his appeal was pending, the earliest expiration date is November 19, 1995.

son outside the door to Judge Moore's chambers and banged on the locked door. Two Sheriff's Deputies responded to a panic alarm at chambers. When the deputies arrived outside Judge Moore's chambers, they found defendant yelling, cursing, flailing his arms and repeatedly instructed Mr. Schwartz to place his hands on the wall. Mr. Schwartz refused to comply with the officer's instructions. The officers then handcuffed Mr. Schwartz and escorted him to the Courthouse detention area where he was cited for disorderly conduct and released. *See* Order of August 1, 1995.

15. After his release from custody, Mr. Schwartz again the Courthouse and proceeded to the Prothonotary's Office. Once inside the Office, Mr. Schwartz entered a file room in the rear of the office. In response to Mr. Schwartz's entrance, office employees called the Sheriff's Department and several Sheriff's Deputies were dispatched to the Office. The Sheriff's Deputies found Mr. Schwartz in the restricted area. The deputies then again escorted Mr. Schwartz from the Courthouse.

Mr. Schwartz was flailing his arms violently, loud and abusive and had to be physically removed from outside Judge Moore's chambers and then from the file room of the Prothonotary which was an area unauthorized for public access. The testimony of Mr. Schwartz and his mother was fictional. The tapes of his telephone calls to Judge Moore's chambers reveal an angry litigant about to explode with a temper tantrum.

16. The applicable state statute, 18 Pa. C.S.A. § 5503, provides:

§ 5503 Disorderly conduct

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

(b) **Grading.**—An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

(c) **Definition.**—As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

17. By his conduct outside the door to Judge Moore's chambers and his conduct in the Prothonotary's Office, Mr. Schwartz violated the disorderly conduct statute, 18 Pa. C.S.A. § 5503. He engaged in threatening, violent, and tumultuous behavior and created a hazardous or physically offensive condition for no legitimate purpose. This is a third degree misdemeanor violation of state law because Mr. Schwartz persisted in his unlawful conduct after reasonable warnings and requests to desist. This conduct constitutes a violation of the condition of Mr. Schwartz's probation that he "refrain from violation of any law (federal, state, and local)." J & C at 2. Mr. Schwartz was convicted of disorderly conduct on September 15, 1995.

18. These instances of conduct in the Montgomery County Courthouse reflect that Mr. Schwartz has not been deterred from threatening and abusive behavior. On December 8, 1987, after a jury trial in the Court of Common Pleas of Montgomery County, Mr. Schwartz was sentenced to a two-year term of probation and a $1,000.00 fine on a criminal trespass conviction and a concurrent one-year term of probation on a disorderly conduct conviction. *Commonwealth v. Schwartz,* 419 Pa.Super. 251, 615 A.2d 350, 353 (1992). The Superior Court described the conduct underlying these convictions as follows:

Factually, this case centers around an occurrence at the residence of Susan and Bill Focht and Joanne Kalin on the night

of September 20, 1986. As Mrs. Focht and Ms. Kalin were preparing to leave their home ... Mrs. Focht unlocked the rear door. As Mrs. Focht waited for Ms. Kalin in the living room, she heard a loud "bang" on the metal part of the back door. Mrs. Focht then looked out the side window and she saw appellant Schwartz. By the time she got to the back door, appellant had opened it, had his foot inside and was yelling at Mrs. Focht to get Ms. Kalin. Mrs. Focht struggled against appellant and was finally able to close and bolt the door. Appellant then hit one of the panes of glass in the door and broke it. Mrs. Focht then called the police. When the police arrived, they found appellant sitting on a railing by the back door. After Mrs. Focht told the police that appellant was causing a disturbance and explained that he broke the door, one of the police officers attempted to handcuff him. Appellant struggled with the police and yelled obscenities at Mrs. Focht, but he was eventually cuffed and placed in a patrol car where he continued to scream.... 

When the police arrived ... appellant was screaming at Mrs. Focht, using obscenities and calling her a liar. When the officers informed appellant he was under arrest, appellant began screaming at the police and continued yelling at Mrs. Focht. One of the officers testified that he warned appellant to be quiet, but appellant persisted in screaming. This testimony was evidence that could sustain a conviction of disorderly conduct pursuant to the statute.

*Schwartz*, 615 A.2d at 355–56, 361 (citations omitted).

*Lying To The Probation Officer*

■ 19. In an effort to police Schwartz's payment of restitution, Probation Officer John Connaughton requested that Schwartz give him copies of the federal income tax returns which Schwartz had filed. On August 14, 1995, Schwartz gave him a copy of what he told P/O Connaughton was his 1994 federal income tax return. A certification from the Internal Revenue Service reveals that Steven Schwartz did not file an income tax return for 1994. Thus, Schwartz violated General Condition 4 of probation which required him to answer truthfully the inquiries of his probation officer.

*Failure to File Income Tax Returns*

■ 20. The failure to file timely tax returns for 1993 and 1994 also constitutes a violation of Condition 1 of probation set forth on the Judgment and Commitment Order, since it constitutes a violation of 26 U.S.C. § 7203.[8]

## ORDER

**AND NOW,** this 30th day of October, 1995, the subpoenas issued by Steven Allan Schwartz, defendant in the above-captioned criminal action to 1) the Honorable Morton I. Greenberg, Judge, United States Court of Appeals for the Third Circuit; 2) Douglas Sisk, Clerk of Court for the Third Circuit Court of Appeals; 3) the Honorable James T. Giles, United States District Judge for the EDPA; 4) the Honorable Norma Shapiro, United States District Judge for the EDPA; 5) Elizabeth Purnell, Courtroom Deputy Clerk to the Honorable Marvin Katz; 6) Florence Jones, Official Court Reporter for the EDPA; 7) Harry Grace, Courtroom Deputy Clerk to the Honorable Lowell A. Reed; 8) Seth Weber, Esquire, Assistant United States Attorney, U.S. Department of Justice; 9) John O'Doherty, Special Agent of the Federal Bureau of Investigation (FBI), U.S. Department of Justice; 10) John Skorupa, U.S. Probation Officer, now in Newark, N.J.; 11) Paul Michener, U.S. Probation Officer; 12) David Litwin, U.S. Probation Officer; 13) Barry Polsky, U.S. Probation Officer; and 14) the Honorable Richard P. Conaboy, U.S. District Judge for the Middle District of Pennsylvania; 15) the Honorable Michael C. Marino, District Attorney of Montgomery County and 16) the Sheriff of Montgomery County for records regarding procedures of the sheriff's office and complaints about them are hereby **QUASHED** because they are frivolous, designed for purposes of harass-

---

**8.** Under 26 U.S.C. § 6012(a)(1)(A)(i), a person like the defendant who is not married, who is not a surviving spouse and who is not a head of a household is required to file a tax return if his gross income exceeds the sum of the exemption amount and the basic standard deduction.

ment, and have no bearing on the issue at hand.

## ORDER

**AND NOW,** this 30th day of October, 1995, it is hereby **ORDERED** that probation is **REVOKED** and defendant is committed to the custody of the Attorney General for a term of imprisonment of one (1) year, commencing October 27, 1995. The court recommends to the Bureau of Prisons that defendant receive psychiatric evaluations.[1]

---

1. On this record the defendant has threatened suicide resulting from a dispute at the offices of Internal Revenue Service which led to his facing arrest and his angry and disorderly outbursts have been directed against a state court judge and a local family resulting in two state court convictions, apart from his conviction for bank fraud and two separate probation violation incarcerations in the present case for self-destructive behavior.